SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
TERESA R. MORIN, Cal Bar No. 351874
tmorin@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:     858.720.8900
Facsimile:     858.509.3691

SAMUEL Z. HYAMS-MILLARD, Cal Bar No. 317941
shyams-millard@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     415.434.9100
Facsimile:     415.434.3947

Attorneys for Defendant Torrid LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| SONNI ECHEVERRIA-CORZAN, an individual, on behalf of herself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TORRID LLC,<br><br>Defendant. | Case No. 3:25-cv-06926-JD<br><br>**DEFENDANT TORRID LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Filed concurrently with Declaration of Wynter L. Deagle, Request for Judicial Notice, and [Proposed] Orders*<br><br>Date:        December 4, 2025<br>Time:        10:00 a.m.<br>Crtrm.:      11<br><br>Judge:      Hon. James Donato<br><br>Trial Date:              Not Set |

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on December 4, 2025, at 10:00 a.m., or on a date more convenient for the Court, before the Honorable James Donato of the United States District Court for the Northern District of California, San Francisco Division, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Torrid LLC ("Defendant" or "Torrid") will and hereby does, move this Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) dismissing the Class Action Complaint filed by Plaintiff Sonni Echeverria-Corzan, an individual, on behalf of herself, the general public, and those similarly situated ("Plaintiff") (the "Complaint") and all causes of action therein for lack of standing and/or failure to state a claim.

Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1) because Plaintiff has failed to plausibly allege that she "suffered an injury in fact that is concrete, particularized and actual or imminent" which is required to establish Article III standing. Plaintiff's Complaint should also be dismissed pursuant to Rule 12(b)(6) because Plaintiff relies on vague and conclusory statements, rather than concrete facts and legal theories and has failed to state a claim upon which relief can be granted. Because she cannot amend her Complaint to overcome her fatal pleading deficiencies, Torrid respectfully requests that the Motion be granted and Plaintiff's Complaint be dismissed with prejudice.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points of Authorities contained herein, Declaration of Wynter L. Deagle, Request for Judicial Notice, and accompanying exhibits thereto, all pleadings and other papers on file in this action, and such other matters as may properly come before the Court.

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ............................................................................................................ ii

I.      INTRODUCTION........................................................................................................1

II.     PLAINTIFF'S ALLEGATIONS...................................................................................1

III.    PLAINTIFF LACKS ARTICLE III STANDING ........................................................1

IV.     ALL CLAIMS FAIL AS A MATTER OF LAW ..........................................................3

        A.      Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail. ..............3

        B.      Plaintiff's CIPA Section 631 Claim Should Be Dismissed.......................................4

                1.      Torrid is Exempt from Liability as a Party to the Communications. .............5

                2.      Clause 1 of CIPA Does Not Apply to the Website. ....................................6

                3.      The Clause 2 Claim Fails Because Plaintiff Fails to Plead That the
                        Contents of Her Communications Were Intercepted While in
                        Transit........................................................................................................6

                4.      The Clause 3 and 4 Claims Automatically Fail............................................8

        C.      CIPA § 638.51 Does Not Apply To The Website .....................................................9

                1.      Statutory text and structure .........................................................................9

                2.      Legislative history ...................................................................................10

                3.      California Consumer Privacy Act ("CCPA")............................................13

                4.      Public policy.............................................................................................13

        D.      Plaintiff's Fifth Cause of Action Must Be Dismissed.............................................14

        E.      Plaintiff's Sixth Claim For Unjust Enrichment Should be Dismissed .....................15

        F.      Plaintiff's Seventh Claim for Trespass to Chattels Should Be Dismissed................15

V.      CONCLUSION .........................................................................................................15

SMRH:4902-2549-4638
NOTICE OF MOTION AND MOTION TO DISMISS

1

TABLE OF AUTHORITIES

2

Page(s)

3

Cases

4

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................................ 3

5

*Augustine v. Great Wolf Resorts, Inc.*
  2024 WL 3450967 (S.D. Cal. July 18, 2024 .................................................. 7, 8, 9

6

7

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................................................ 3

8

*Bohnak v. Marsh & McLennan Cos.*
  79 F.4th 276 (2d Cir. 2023)................................................................................. 2

9

10

*Byars v. Hot Topic, Inc.*
  656 F. Supp. 3d 1051 (C.D. Cal. 2023)............................................................... 5

11

12

*Byars v. Sterling Jewelers, Inc.*
  2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)....................................................... 2

13

*Cantinieri v. Verisk Analytics, Inc.*
  2024 WL 5202579 (E.D.N.Y. Dec. 23, 2024) .................................................... 2

14

15

*Copley Press, Inc. v. Superior Court*
  39 Cal.4th 1272 (2006)....................................................................................... 13

16

17

*D'Angelo v. Penny OpCo, LLC*
  2023 WL 7006793 (S.D. Cal. Oct. 24, 2023)..................................................... 6

18

*Doe I v. Google LLC*
  2024 WL 3490744 (N.D. Cal. July 22, 2024) .................................................... 15

19

20

*Doe v. Kaiser Found. Health Plan, Inc.*
  2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .................................................... 6

21

22

*In re DoubleClick Inc. Priv. Litig.*
  154 F. Supp. 2d 497 (S.D.N.Y. 2001)................................................................. 5

23

*Esparza v. Gen Digit. Inc.*
  2024 WL 655986 (C.D. Cal. Jan. 16, 2024)........................................................ 4

24

25

*In re Facebook, Inc. Internet Tracking Litig.*
  956 F.3d 589 (9th Cir. 2020).............................................................................. 5

26

*Forouzesh v. Starbucks Corp.*
  2016 WL 4443203 (C.D. Cal. Aug. 19, 2016) .................................................... 15

27

28

*Garcia v. Build.com, Inc.*
    2024 WL 1349035 (S.D. Cal. Mar. 29, 2024).................................................................. 8

*Gardiner v. Walmart, Inc.*
    2021 WL 4992539 (N.D. Cal. July 28, 2021) .................................................................. 2

*Hammerling v. Google LLC*
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ......................................................................... 4

*Heiting v. FKA Distributing Co.*
    2025 WL 736594 (C.D. Cal., Feb. 3, 2025) ............................................................... 2, 3

*Heiting v. Taro Pharms. USA, Inc.*
    728 F. Supp. 3d 1112 (C.D. Cal. 2024)......................................................................... 8

*Hernandez v. Hillsides, Inc.*
    47 Cal. 4th 272 (2009).............................................................................................. 3, 4

*Hoffman v. Life Ins. Co. of the S.W.*
    740 F. Supp. 3d 918 (N.D. Cal. 2024) ....................................................................... 11

*Hubbard v. Google LLC*
    2024 WL 3302066 (N.D. Cal. July 1, 2024) ................................................................. 4

*Indus. Waste & Debris Box Serv., Inc. v. Murphy*
    4 Cal. App. 5th 1135 (2016) ....................................................................................... 14

*Intel Corp. v. Hamidi*
    30 Cal. 4th 1342, 1350-51 (2003) .............................................................................. 15

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009) .................................................................................... 14

*Klein v. Facebook, Inc.*
    580 F. Supp. 3d 743 (N.D. Cal. 2022) ....................................................................... 15

*Lexin v. Superior Court*
    47 Cal. 4th 1050 (2010)............................................................................................... 13

*Licea v. Am. Eagle Outfitters, Inc.*
    659 F. Supp. 3d 1072 (C.D. Cal. 2023)........................................................................ 8

*Licea v. Cinmar*
    659 F. Supp. 3d 1096 (C.D. Cal. 2023)........................................................................ 6

*Licea v. Hickory Farms LLC*
    2024 WL 1698147 (Cal. Sup. March 13, 2024) ................................................... 10, 13

*Low v. LinkedIn Corp.*
    2011 WL 5509848 (N.D. Cal. Nov. 11, 2011).............................................................. 2

*LVRC Holdings LLC v. Brekka*
    581 F.3d 1127 (9th Cir. 2009) .................................................................................... 14

*Malkin v. Fed. Ins. Co.*
    562 F. Supp. 3d 854 (C.D. Cal. 2022) ........................................................................ 11

*Martin v. Sephora USA, Inc.*
    2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ......................................................... 8, 9

*Mastel v. Miniclip SA*
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ...................................................................... 5, 7

*McBride v. Boughton*
    *20 Cal. App. 4th 379 (2004)* ...................................................................................... 15

*McCluskey v. Hendricks*
    2021 WL 6773140 (C.D. Cal. Nov. 17, 2021) ............................................................. 4

*Mt. Graham Red Squirrel v. Madigan*
    954 F.2d 1441 (9th Cir. 1992) ..................................................................................... 10

*Pena v. Gamestop, Inc.*
    2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) .............................................................. 5

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
    442 F.3d 741 (9th Cir. 2006) ....................................................................................... 11

*Rodriguez v. Autotrader.com, Inc.*
    762 F. Supp. 3d 921 (C.D. Cal. 2025) .......................................................................... 3

*Rodriguez v. Google LLC*
    2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ................................................................ 8

*Saleh v. Nike, Inc.*
    562 F. Supp. 3d 503 (C.D. Cal. 2021) .......................................................................... 6

*Sanchez v. Cars.com*
    2025 WL 487194 (Cal. Sup. Jan. 27, 2025) ............................................................... 12

*Shah v. Cap. One Fin. Corp.*
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) ...................................................................... 15

*Shulman v. Group W Prods., Inc.*
    18 Cal. 4th 200 (1998) .................................................................................................. 4

*Tavernetti v. Superior Court*
    22 Cal. 3d 187 (1978) ................................................................................................... 5

Case No. 3:25-cv-06926-JD

NOTICE OF MOTION AND MOTION TO DISMISS

*In re The Application of the United States of America for an Order Authorizing the use of a*
    *Cellular Telephone Digital Analyzer*
    885 F. Supp. 197, 200 (C.D. Cal. 1995) ................................................................................. 10

*Thomas v. Papa Johns Int'l, Inc.*
    2024 WL 2060140 (S.D. Cal. May 8, 2024) ........................................................................... 4

*TransUnion LLC v. Ramirez*
    594 U.S. 413 (2021) ........................................................................................................... 1, 3

*Valenzuela v. Keurig Green Mountain, Inc.*
    674 F. Supp. 3d 751 (N.D. Cal. 2023) .................................................................................. 8

*Whitaker v. Health Net of California, Inc.*
    2012 WL 174961 (E.D. Cal. Jan. 20, 2012) ......................................................................... 2

*Yoon v. Lululemon USA, Inc.*
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................................................ 6, 7

*Yourish v. Cal. Amplifier*
    191 F.3d 983 (9th Cir. 1999) ............................................................................................. 14

*Yunker v. Pandora Media, Inc.*
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ..................................................................... 2

<u>Statutes</u>

18 U.S.C. §§ 2510–23 ............................................................................................................... 6

Cal. Civ. Code § 1798.100(c) .................................................................................................. 13

Cal. Civ. Code § 1798.100 *et seq.* .......................................................................................... 13

Cal. Civ. Code § 1798.140(v)(1)(A) ........................................................................................ 13

Cal. Civ. Code § 1798.140(v)(1)(F) ........................................................................................ 13

Cal. Civ. Code § 1798.140(v)(1)(G) ........................................................................................ 13

Cal. Penal Code § 631 ........................................................................................................... 4, 5

Cal. Penal Code § 631(a) .......................................................................................................... 6

Cal. Penal Code § 632.01 ........................................................................................................ 10

Cal. Penal Code § 632.01(a)(1) ................................................................................................. 9

Cal. Penal Code § 638.50 ............................................................................................... 9, 10, 11

Cal. Penal Code § 638.51 ..................................................................................... 9, 10, 11, 12, 13

Cal. Penal Code § 638.52 ........................................................................................ 9, 10, 11, 12

Cal. Penal Code § 638.52(c) ................................................................................................. 9

Cal. Penal Code §638.52(d) .................................................................................................. 9

Cal. Penal Code § 638.52(d)(1) ........................................................................................... 9

Cal. Penal Code § 638.52(d)(3) ........................................................................................... 9

Cal. Penal Code § 638.52(j) ............................................................................................... 10

Cal. Penal Code § 638.52(m) ............................................................................................. 10

Cal. Penal Code § 638.53 .......................................................................................... 9, 10, 11

Cal. Penal Code §§ 1546 *et seq.* ....................................................................................... 12

Other Authorities

Fed. R. Civ. Proc. 12(b)(6) .................................................................................................. 3

Rest. (2d) of Torts § 652B, Comment b ............................................................................. 4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Complaint is a sprawling and legally deficient attempt to impose liability on Torrid for its use of standard website technologies. Based on a single visit to www.torrid.com (the "Website"), Plaintiff asserts seven causes of action—none of which are plausibly alleged, legally cognizable, or supported by sufficient factual detail. At the heart of her claims is the allegation that Torrid's website utilized software code that resulted in the installation of cookies on her device. She does not allege that the cookies collected information or communications from or about her or that any third party misused her data. Instead, she relies on vague, conclusory assertions and mischaracterizations to try to manufacture claims where none exist. Plaintiff's claims are legally baseless and factually unsupported and her Complaint should be dismissed in its entirety.

### II.    PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that at some point "[d]uring the last year," she visited the Website as a "tester" or "compliance auditor" to test Torrid's privacy practices and was presented with a cookie consent pop-up banner which stated: "We use [cookies] for marketing and to analyze and improve your experience on our website. By continuing to use our website or closing this banner, you consent to our use of cookies. To learn more, please visit our Privacy Policy." (Compl. ¶¶ 83-84.) Plaintiff further claims that she clicked the "Reject All" button to reject all cookies but that not all cookies were disabled. (*Id.* ¶ 85.) The Complaint, however, is silent on all other aspects of her alleged Website visit. It does not plead the date or time Plaintiff visited the Website, which pages she visited, what actions she took on the Website, the webpages she purportedly visited, or the information that was collected ***from or about her*** during her visit. (*Id.* ¶¶ 83-90.) She also does not allege she entered any information into forms or made search queries. (*Id.*)

### III.    PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff has failed to plausibly allege she "suffered an injury in fact that is concrete, particularized and actual or imminent" which is required to establish Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). None of her purported injuries are sufficient to establish Article III standing.

*First*, the mere disclosure of the Plaintiff's information does not, standing alone, establish the injury in fact required for Article III. *Cantinieri v. Verisk Analytics, Inc.*, 2024 WL 5202579, at *1 (E.D.N.Y. Dec. 23, 2024). Plaintiffs must still plausibly allege that the disclosure of their PII to an unauthorized third party caused them an *actual* injury or a *credible risk of imminent* injury. *See Bohnak v. Marsh & McLennan Cos., 79* F.4th 276, 287 (2d Cir. 2023) (emphasis added). Plaintiff's failure to allege what information was disclosed and how she was harmed is fatal. *See Whitaker v. Health Net of California, Inc.*, 2012 WL 174961, at *2 (E.D. Cal. Jan. 20, 2012) (no injury-in-fact where Plaintiffs did not explain how they were actually harmed by the disclosure of their information); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy.").

*Second*, the alleged lost or diminished value of information does not constitute an injury-in-fact. Absent allegations that there was a market for Plaintiff's information, that she intended to participate in that market by selling her information, and how she was "foreclosed from capitalizing on the value of [her] personal data or how [she] was deprived of the economic value of [her] personal information simply because [her] unspecified personal information was purportedly collected by a third party," courts have held this theory does not constitute an injury-in-fact. *Low v. LinkedIn Corp.*, 2011 WL 5509848 at *4–6 (N.D. Cal. Nov. 11, 2011); *see also Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *3 (N.D. Cal. July 28, 2021); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980 at *3-4 (N.D. Cal. Mar. 26, 2013) (collecting cases). Plaintiff fails to do so here. Quotations from a handful of studies (most written over a decade ago) stating that, in certain contexts, personal information can have value does *not* establish that there was a market for the *type* of information allegedly disclosed or for *Plaintiff's* information. Plaintiff also does not allege that she attempted to sell her information or that she was impaired in her ability to do so.

*Third*, to establish standing based on a California Invasion of Privacy Act (CIPA) violation, Plaintiff "must allege a concrete and particularized injury." *Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *2 (C.D. Cal., Feb. 3, 2025). "An allegation of bare procedural

1  violations, divorced from any concrete harm . . . does not suffice for Article III standing."

2  *TransUnion*, 594 U.S. at 440 (citation omitted). This is precisely the case here. Plaintiff provides

3  no information about her Website visit or the information collected about her. *See id.* at *3

4  (allegations insufficient because plaintiff "fails to allege any basic facts from which the Court

5  could infer a concrete injury, like when and how many times she visited the site, what information

6  she provided, what information Defendant captured"); *Rodriguez v. Autotrader.com, Inc.*, 762 F.

7  Supp. 3d 921, 927 (C.D. Cal. 2025) (dismissing CIPA claims for lack of standing because Plaintiff

8  failed to allege what information of hers was improperly collected and shared).

9      **IV.**    <u>**ALL CLAIMS FAIL AS A MATTER OF LAW**</u>

10      To survive a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), "a complaint must

11  contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

12  face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) Legal conclusions and "[t]hreadbare recitals of

13  the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.;*

14  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff does not satisfy these standards.

15      **A.**    <u>**Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail.**</u>

16      Plaintiff's Constitutional invasion of privacy claim and intrusion upon seclusion claims fail

17  because Plaintiff did not have a reasonable expectation of privacy and did not plead a "highly

18  offensive" intrusion into her privacy. To state a claim for invasion of privacy, Plaintiff to show

19  both that maintains a reasonable expectation of privacy in the information at issue and the

20  intrusion is so serious in nature, scope, and actual or potential impact as to constitute an egregious

21  breach of social norms. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). Similarly, a

22  claim for intrusion upon seclusion requires allegations that a defendant "intentionally intrude[d]

23  into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of

24  privacy" and that the intrusion "occur[red] in a manner highly offensive to a reasonable person."

25  *Id.* at 286. The Complaint fails to plead facts establishing these elements.

26      As an initial matter, Plaintiff did not have a reasonable expectation of privacy. Plaintiff

27  alleges that the cookies on Torrid's website collect "browsing activities." (Compl. ¶ 20.)

28  Information concerning browsing activities is the exact type of information that website users

1    should reasonably expect to be collected by websites. *See Hubbard v. Google LLC*, 2024 WL

2    3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection

3    of users' data, including by tracking users across the internet, and a reasonable user should expect

4    as much."); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) ("[T]here

5    is no reasonable expectation of privacy when the data collection is within users' common-sense

6    expectation or when the information is not sensitive.").

7         Plaintiff also fails to plead an actionable <u>intrusion by Torrid</u>. Plaintiff's claims are

8    intrusion-based claims—*not disclosure claims*—and require a highly offensive intrusion to be

9    actionable. *See Hernandez*, 47 Cal. 4th at 288; Rest. (2d) of Torts § 652B, Comment b (an

10   intrusion is where a defendant "oversee[s] or overhear[s] the plaintiff's private affairs, as by

11   looking into his upstairs windows with binoculars or tapping his telephone wires[,] . . . opening his

12   private and personal mail, searching his safe or his wallet, examining his private bank account,

13   [etc.]"). Plaintiff alleges the "Website caused third-party cookie data and users' Private

14   Communications to be transmitted to Third Parties." (Compl. ¶ 31.) This is a disclosure—not an

15   intrusion by Torrid. *See Shulman v. Group W Prods., Inc*., 18 Cal. 4th 200, 214 (1998).

16        Finally, Plaintiff's conclusory allegation that Torrid's actions "constitute an egregious

17   breach of social norms that is highly offensive" is insufficient as a matter of law. *See Thomas v.

18   Papa Johns Int'l, Inc*., 2024 WL 2060140, at *7 (S.D. Cal. May 8, 2024) ("Plaintiff's other

19   allegations directed to the 'highly offensive' element are conclusory, and do not defeat

20   Defendant's motion."); *Esparza v. Gen Digit. Inc.*, 2024 WL 655986, at *5 (C.D. Cal. Jan. 16,

21   2024) ("Plaintiff conclusorily states 'Defendant's actions were highly offensive to all reasonable

22   persons [,]' but fails to explain what actions were highly offensive, [or] why they were

23   offensive.")(citations omitted); *McCluskey v. Hendricks*, 2021 WL 6773140, at *6 (C.D. Cal. Nov.

24   17, 2021) ("Plaintiff has not alleged in a more than conclusory manner that somehow accessing

25   the general posts of a private Instagram account would be considered 'highly offensive' to a

26   reasonable person.").

27        **B.    <u>Plaintiff's CIPA Section 631 Claim Should Be Dismissed.</u>**

28        Section 631 makes actionable three patterns of conduct: intentional wiretapping (Clause 1),

willfully attempting to learn the contents or meaning of a communication in transit over a wire (Clause 2), and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities (Clause 3). *See Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978). Clause 4 of section 631 also imposes liability upon "anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' . . . three bases for liability." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). Plaintiff fails to state a claim for violation of any of these clauses.

### 1.   Torrid is Exempt from Liability as a Party to the Communications.

Plaintiff cannot establish a violation of any of the clauses of CIPA because both Torrid and the third parties referenced in the Complaint were parties to the purported communications with Plaintiff. Section 631 exempts from liability any individual or entity who is a "party" to the "communication," so that one participant in a conversation cannot be held to have wiretapped another. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). Here, Plaintiff plainly alleges that Torrid is a party to the communications, as all communications are alleged to have been transmitted from Plaintiff to Torrid through the Website. (*See* Compl. ¶¶ 67, 82.)  Accordingly, Torrid cannot be held directly liable for violations of CIPA. *See Pena v. Gamestop, Inc*., 2023 WL 3170047, at *4 (S.D. Cal. Apr. 27, 2023) (finding that website operator is "squarely within the party exception and barring Defendant's liability under […] CIPA"); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514 (S.D.N.Y. 2001) (finding that website owners are parties to the communications sent by website users).

Further, as to the Third Parties, no CIPA liability arises if the third party allegedly "intercepting" or "eavesdropping" is a tool, agent, or extension of the website operator. In such case, the third-party is also considered a party, not a third-party eavesdropper, and there is no liability under CIPA. Here, Plaintiff does not allege any facts showing that any of these Third-Parties independently used ***Plaintiff's data or communications*** for any purpose other than to provide services to Torrid. Accordingly, the Section 631 Claim fails because the third-parties were a tool, agent, or extension of Torrid, and therefore parties to the communications. *See Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) ("Without alleging a single specific fact

in support of the contention that the third party 'harvest[s] data for financial gain,' the allegation is a mere conclusion disregarded under Twombly and Iqbal."); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *18 (N.D. Cal. Apr. 11, 2024) (dismissing CIPA claim against website owner based on interception by third-party cookie vendors); *Licea v. Cinmar*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023) (CIPA claim failed when the vendor "analyzed or used the data on behalf of or in tangent with" the website owner).

### 2.    Clause 1 of CIPA Does Not Apply to the Website.

"[C]ourts have consistently held that Clause 1 applies only to 'telegraph and telephone' wires, lines, cables, or instruments,' and not to internet connections." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *6 (S.D. Cal. Oct. 24, 2023) (citation omitted). Plaintiff's clause 1 claim fails because her claims are solely based on internet communications.

### 3.    The Clause 2 Claim Fails Because Plaintiff Fails to Plead That the Contents of Her Communications Were Intercepted While in Transit.

Plaintiff's Clause 2 claim fails because she has not plead that Torrid or a third-party "read[], or attempt[ed] to read, or to learn the contents or meaning or any message, report, or communication" and did so "while the same is in transit" Cal. Penal Code § 631(a).

*First*, Plaintiff has not alleged any facts showing that the "contents" of her communications were intercepted. The Ninth Circuit held that "contents" of an online communication under the Wiretap Act[1] "refers to the intended message conveyed by the communication" and does not include "record information regarding the characteristics of the message that is generated in the course of the communication." Browsing information, such as "keystrokes, mouse clicks, pages viewed," and "the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" are record information and not "message content." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021).

Here, Plaintiff does not allege that Torrid or a Third Party willfully read, or attempted to

---

[1] An alleged CIPA violation is analyzed in the same way as a federal Wiretap Act violation, 18 U.S.C. §§ 2510–23. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021).

read or learn the **contents or meaning of her communications** with Torrid. She alleges that the following information was collected: browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data. (Compl. ¶ 32.) None of this information is "contents or meaning of communications"; it is all non-actionable "record information."  *See Yoon*, 549 F. Supp. 3d at 1082–83 (dismissing CIPA claim and holding website address (URL), webpages visited, date and time of website visits, and device identifiers such browser type and device operating system were not contents of communications).

Moreover, Plaintiff's ambiguous allegation that unspecified "user input data" was collected, Compl. ¶ 132, fails to establish that that the contents of Plaintiff's communications were collected and disclosed. *Augustine v. Great Wolf Resorts, Inc.* is directly on point. There, the plaintiff alleged that Great Wolf allowed Contentsquare to read and learn the contents of communications, "including the pages and content they viewed, their scroll movements, words and text typed even if not fully entered, copy and paste actions, any search terms (even if not fully entered), mouse clicks and movements, keystrokes, and all other information related to the visit." 2024 WL 3450967, at *5 (S.D. Cal. July 18, 2024). The Court dismissed the CIPA Clause 2 claim holding that "[t]hese allegations fail to show communications between Plaintiff and Great Wolf or that the contents of such communications were intercepted."  The same result is dictated here.

*Second*, Plaintiff fails to plead facts showing that the contents of the communications were intercepted while in transit. Clause 2 "only imputes liability when the defendant reads, or attempts to read, a communication that is <u>in transit</u> or <u>passing over</u> any wire, line, or cable, or <u>is being sent from, or received at</u> any place within California." *Mastel*, 549 F. Supp. 3d at 1135 (internal quotations omitted) (emphasis in original). As to the in transit requirement, Plaintiff rotely parrots the language of CIPA, alleging the Third Parties "read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and Class members, on the one hand, and Defendant, on the other, while the electronic communications were in transit or were being sent from or received at any place within California." (Compl. ¶ 133.) California courts have repeatedly found that allegations that were **less** conclusory than Plaintiff's were insufficient to

SMRH:4902-2549-4638

NOTICE OF MOTION AND MOTION TO DISMISS

1   state a CIPA claim. *See Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal.

2   2023) ("bare allegations that 'the third party ... secretly intercept[s] (during transmission and in

3   real time)' is conclusory and does not allege specific facts as to how or when the interception takes

4   place"); *Rodriguez v. Google LLC*, 2022 WL 214552, at *1 (N.D. Cal. Jan. 25, 2022) (allegations

5   insufficient where plaintiff did not describe "how Google actually intercepts data in real time");

6   *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (allegation

7   that code allowed third party to "secretly intercept in real time" was insufficient).

8       *Third*, Plaintiff concludes that interception occurred in California because her device was

9   in California and cookies resided on her device. (Compl. ¶ 137.) This bare conclusion is also

10  insufficient because Plaintiff has failed to plead facts showing that the interception was

11  **contemporaneous** with the sending or receipt of a communication in California. *See Heiting v.*

12  *Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024) (noting that "the structure

13  and text of the second clause suggest that the 'sen[ding], or receiv[ing]' of messages [in

14  California] still has a contemporaneous requirement."). Plaintiff's vague allegations are not

15  sufficient to show her communications were intercepted *in real time* (before reaching the Torrid)

16  in California. *Id.* at 1125-26 (dismissing CIPA claim where plaintiff alleged the alleged

17  communication was "sent from, or received within California" but did not provide facts showing

18  in-transit interception or "any basis to infer that all relevant events occurred in California").

19          **4.      The Clause 3 and 4 Claims Automatically Fail.**

20      Plaintiff's clause 3 claim fails because she has not alleged facts demonstrating "use or

21  attempted use of information obtained **as the result of** engaging in [a violation of Categories 1 or

22  2]." *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *7 (E.D. Cal. Mar. 30, 2023). Thus, "a

23  violation of Clause Three is contingent upon a violation of Clauses One or Two." *Garcia v.*

24  *Build.com, Inc.*, 2024 WL 1349035, at *7 (S.D. Cal. Mar. 29, 2024) (citations omitted). As

25  explained above, Plaintiff failed to plausibly allege a predicate Clause 1 or Clause 2 violation.

26  Plaintiff "therefore necessarily fails to allege a predicate violation of Clause Three." *Augustine*,

27  2024 WL 3450967, at *8 (citations and quotations omitted). Accordingly, because there is no

28  predicate violation under Clauses 1, 2, or 3, Plaintiff has also failed to plausibly allege an aiding-

1    abetting claim against Torrid under Clause 4. *Id.*; *see also Martin*, 2023 WL 2717636, at *12.

2    ### C.    CIPA § 638.51 Does Not Apply To The Website

3    The statutory text and structure, legislative history, California's overall regulatory scheme,

4    and public policy all confirm that section 638.51 only applies to telephone communications.

5    ### 1.    Statutory text and structure

6    Section 638.51 states that "a person may not install or use a pen register. . . without first

7    obtaining a court order pursuant to Section 638.52 or 638.53." Further, the statute defines a "pen

8    register" as a "device or process that records or decodes dialing, routing, addressing, or signaling

9    information transmitted by an instrument or facility from which a wire or electronic

10    communication is transmitted, but not the contents of a communication." Cal. Penal Code §

11    638.50. While the definition of a "pen register" does not expressly state whether it includes

12    general website technologies that capture incoming information from a website visitor's device,

13    the cross-referenced provisions in CIPA, sections 638.52 and 638.53, confirm that it does not.

14    Sections 638.52 and 638.53 permit law enforcement to use a pen register if certain

15    conditions are met. Subsection (d) of section 638.52 details specific information that must be

16    included in a court order authorizing the use of a pen register. That includes the ***telephone line*** and

17    ***telephone number*** of the individual that law enforcement is investigating. Cal. Penal Code §§

18    638.52(d)(1), 638.52(d)(3). Furthermore, subsection (c) states that a trap and trace device shall not

19    include the physical location of the targeted individual "except to the extent that the location may

20    be determined from the telephone number." *Id.* § 638.52(c). The multiple references to telephones

21    in section 638.52 demonstrates that a "pen register" applies only to telephone communications. If

22    the Legislature had intended, in 2015, for a pen register to apply beyond telephone

23    communications, it would not have required a court order authorizing the use of a trap and trace

24    device to detail the "number" and "physical location" of a "telephone line."

25    Indeed, other amendments to CIPA confirm that the Legislature made a deliberate choice

26    in limiting section 638.51 to telephone communications. For example, in 2016, the Legislature

27    enacted a new provision, section 632.01, which prohibits the disclosure of certain confidential

28    communications "in any forum, including . . . ***Internet Web sites***." Cal. Penal Code §

632.01(a)(1) (emphasis added). The Legislature's choice to apply section 632.01 to the internet, but omit similar language from sections 638.50–638.53, demonstrates that the Legislature intended section 638.51 to apply only to telephones. In 2016, one year after enacting sections 638.50–638.53, the Legislature amended section 638.52 to compensate telecommunication providers for assisting in installing a pen register or trap and trace device but did not amend section 638.52 to remove the language referencing telephones. *See* Cal. Penal Code § 638.52(j). Finally, in 2022, the Legislature amended section 638.52 to prohibit the use of a pen register or trap and trace device in certain situations, but again did not remove the language referencing telephones. *See* Cal. Penal Code § 638.52(m). These choices reflect the continued decision by the Legislature to limit the reach of section 638.51 to telephones. *See In re The Application of the United States of America for an Order Authorizing the use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (explaining that Congress's decision to limit the Federal Wiretap Act's trap and trace provision to telephone lines could "not be assumed to be inadvertent").

In short, there is nothing in the statutory text that suggests that the Legislature intended Section 638.51 to apply to website software that captures incoming information from a website visitor's device. *See Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *3 (Cal. Sup. March 13, 2024) (dismissing section 638.51 claim, holding that it applies to telephones and not to website-use technologies: "Legislative updates and commentary continue to explicitly cover cordless and cellular phone technology without reference to internet based communications.").

### 2. Legislative history

The legislative history[2] of Penal Code sections 638.50 through 638.53 further supports the conclusion that the Legislature never intended for section 638.51 to apply to commercial websites that capture information sent to the website from a website visitor's device. California Assembly Bill ("AB") No. 929 was enacted on August 13, 2015 with the goal of adding Sections 638.50–638.53 to the Penal Code as part of a statutory scheme that authorized state and local law

---

[2] A court may consider the statute's legislative history to determine the Legislature's intent. *See Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1453 (9th Cir. 1992).

enforcement to use trap and trace devices as long as certain conditions were met. (Request for Judicial Notice ("RJN"), Ex. A, p. 1.)[3] According to the legislative history, the purpose of Assembly Bill 929 (now Penal Code sections 638.50–638.53) was "to authorize state and local law enforcement to seek emergency orders for pen registers/trap and trace devices used in telephone surveillance, while requiring as a precondition a standard of evidence higher than under federal law." (RJN Ex. B, p. 4.) The need for the bill arose due to a conflict between federal and state law. Federal law authorized "states and local law enforcement officers to use pen register and trap and trace devices by obtaining a court order first," but it did "not allow them to obtain an emergency order unless there [was] a state statute authorizing and creating a process for states and local law enforcement officers to do so." (RJN Ex. A, p. 10.) At the time, California did not "have a state statute authorizing the use of pen registers or trap and trace devices." (RJN Ex. A, p. 10.) Assembly Bill 929 remedied that problem by authorizing "state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations." *Id.* at p. 6. Nothing suggests that the purpose of Assembly Bill 929 was to regulate collection of information by a website.

This is further confirmed by the Assembly bill analysis of AB 929, which explains that the bill "would clarify that any location information obtained by a pen register or a trap and trace device is limited to the information that is contained in the telephone number." (RJN Ex. A at 11.) It is also confirmed by the further legislative bill analyses, which repeatedly refer to pen registers and trap and trace devices as tools that law enforcement uses to collect telephone numbers. *See* RJN Ex. A, p. 10 ("another tool law enforcement uses is called a 'trap and trace device' which allows them to record what numbers have called a specific telephone line, i.e. all incoming phone numbers" and "Pen registers and track *[sic]* and trace devices track incoming and outgoing telephone calls."); *id.*, p. 11 ("any location information obtained by a pen register or a track *[sic]* and trace device is limited to the information that is contained in the telephone number"); RJN Ex. B, p. 1 (stating

---

[3] The Court may take judicial notice of public legislative documents, including legislative history and committee reports. See *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Hoffman v. Life Ins. Co. of the S.W.*, 740 F. Supp. 3d 918, 924 (N.D. Cal. 2024); *Malkin v. Fed. Ins. Co.*, 562 F. Supp. 3d 854, 861 (C.D. Cal. 2022).

that AB 929 "[a]uthorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in telephone surveillance"); *id.*, p. 5 ("As noted above, pen registers/trap and trace devices are used by law enforcement for telephone surveillance to record incoming and outgoing phone numbers from a tapped line."); RJN Ex. C, p. 1 ("This bill authorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in telephone surveillance. . .".) The bill analyses do not mention websites or website technologies. If section 638.51 was meant to apply to websites, the legislative history would have at least acknowledged that, particularly given the internet's widespread use by 2015. It does not. *See Sanchez v. Cars.com*, 2025 WL 487194 (Cal. Sup. Jan. 27, 2025) ("Penal Code section 638.51 and its legislative history suggest that section 638.51 applies only to telephone-tracking technology, not IP address-collecting software used by a website . . . The California legislature enacted Assembly Bill 929, the genesis of CIPA section 638.51, in 2015 to create a comprehensive framework governing how California law enforcement officials could obtain a pen register or trap and trace device, just like its federal counterpart...pen registers and track and trace devices refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites.")

One year later, the Legislature reaffirmed in Assembly Bill 1924 that section 638.51 was meant to apply only to telephones. Assembly Bill 1924 primarily amended California's Electronic Communication Privacy Act ("ECPA"), Cal. Penal Code §§ 1546 et seq., which allowed the government to compel the production of electronic communications if the government obtained a search warrant or a wiretap order, to ensure the government could compel the production of electronic communication information pursuant to an order authorizing the use of a pen register or trap and trace device under section 638.52. (RJN Ex. F, pp. 6–9.) Critically, the bill analyses of Assembly Bill 1924 explain that pen registers and trap and trace devices obtain "call detail records" from "electronic communication[s]." (RJN Ex. F, p. 7.) In other words, as confirmed by the bill analyses, the information that is captured is ***telephone numbers***. *See* RJN Ex. D, p. 7 ("A 'trap and trace device' records what numbers had called a specific telephone, i.e., all incoming

1    phone numbers."); RJN Ex. E, p. 1 ("pen register/trap and trace-device[s] . . . are telephone

2    surveillance devices used to record incoming and outgoing phone numbers".)

3                    **3.        California Consumer Privacy Act ("CCPA")**

4            Plaintiff's interpretation of Penal Code section 638.51 also fails because it undermines the

5    CCPA, Cal. Civ. Code § 1798.100 *et seq.* Enacted three years after Section 638.51, the CCPA

6    regulates the collection and disclosure of "personal information," which is broadly defined to

7    include: (1) "Identifiers such as . . . Internet Protocol address"; (2) "Internet or other electronic

8    network activity information, including . . . a consumer's interaction with an internet website

9    application"; and (3) "Geolocation data." *Id.* § 1798.140(v)(1)(A), (F), (G). Importantly, the

10   CCPA ***expressly*** permits businesses to collect this information and ***does not*** require consent for

11   collection. *See id.* § 1798.100(c). In light of the CCPA, Plaintiff's interpretation of section 638.51

12   is illogical.[4] If section 638.51 prohibits collecting any information generated from a website

13   visitor's device that identifies the website visitor, why did the Legislature expressly permit

14   businesses to collect such information? The only logical interpretation is that section 638.51 does

15   not apply to website technologies that capture information from a website visitor's device.

16                    **4.        Public policy**

17           In addition to undermining the CCPA, interpreting the statute as Plaintiff proposes would

18   lead to unreasonable results. *See Copley Press, Inc. v. Superior Court,* 39 Cal.4th 1272, 1291

19   (2006) (explaining that "it is appropriate [for a court] to consider 'the consequences that will flow

20   from a particular interpretation,'" including which interpretation would lead to a more reasonable

21   result). A trap and trace device is installed by one person on another person's device without

22   consent. Here, Plaintiff alleges that a party that installs software ***on its own website*** to collect

23   information from a website visitor's device is using a trap and trace device. If that is the case, then

24   every website that obtains such information would be subject to criminal liability, including the

25   Legislature and courts across California. That cannot be what the Legislature intended when it

26   enacted section 638.51.  *See Licea,* 2024 WL 1698147 at *4 ("The court also finds public policy

27   ─────────────────
     [4] When interpreting a statute, courts "endeavor to harmonize it with other enactments to the extent

28   possible." *Lexin v. Superior Court*, 47 Cal. 4th 1050, 1095 (2010).

1   strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single

2   entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of

3   connecting the website, as a violator. Such as broad interpretation would potentially disrupt a large

4   swath of internet commerce without further refinement as the precise basis of liability, which the

5   court declines to consider.") *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009)

6   ("The Supreme Court has long warned against interpreting criminal statutes in surprising and

7   novel ways that impose unexpected burdens on defendants.").

8           **D.      Plaintiff's Fifth Cause of Action Must Be Dismissed.**

9           Plaintiff's claim for fraud, deceit and/or misrepresentation fails because she has failed to

10  plead this claim with the required particularity. Allegations of fraud "must be accompanied by 'the

11  who, what, when, where and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567

12  F.3d 1120, 1124 (9th Cir. 2009). Moreover, the plaintiff must plead with particularity "what is

13  false or misleading about a statement," "why it is false," and allege facts sufficient to plausibly

14  establish "why the disputed statement was untrue or misleading when made." *Yourish v. Cal.*

15  *Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999).

16          Here, Plaintiff fails to allege any of the elements of her claim with particularity. She does

17  not even allege *the date* she visited the Website. Further, Plaintiff's subjective belief that clicking

18  "Reject All" would stop Torrid from using all cookies on the Website based on the wording and

19  placement of a button do not amount to a false statement of material fact by Torrid. *Indus. Waste*

20  *& Debris Box Serv., Inc. v. Murphy*, 4 Cal. App. 5th 1135, 1159 (2016) ("[M]ere assertions that a

21  statement is 'false,' even in sworn declarations, do not satisfy a plaintiff's burden to demonstrate

22  falsity."). In addition, Plaintiff admits that the Torrid expressly discloses that its "advertising

23  partners may collect information about your activities on our Sites on your current device" and

24  may also "collect IP address, browser or operating system type and version, and demographic or

25  inferred-interest information, as well as personal information if you have submitted such

26  information to us through the Sites, such as your name, postal address, email address, or device

27  ID," and that "certain cookies are 'Required' for operation of the Website" and "users cannot opt

28  out of these Cookies[.]" (Compl. ¶¶ 23, 24, 84.) She does not allege with particularity how the

1   alleged misrepresentations were concealed, why they were not reasonably known to Plaintiff, or

2   why or how Torrid knew or should have known the cookies were continuing to deploy after the

3   "Reject All" button was clicked. Finally, the Complaint contains no specific factual allegations

4   that Torrid "intended to deceive and induce reliance" by Plaintiff.

5           **E.      Plaintiff's Sixth Claim For Unjust Enrichment Should be Dismissed**

6           Plaintiff's claim for unjust enrichment must be dismissed because under California law,

7   there is no cause of action for unjust enrichment. *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743,

8   829 (N.D. Cal. 2022) (collecting cases). Unjust enrichment is a remedy available where the

9   remedies at law are inadequate. *See Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1051

10  (N.D. Cal. 2025); *McBride v. Boughton*, 20 Cal. App. 4th 379, 388 (2004). Because all of

11  Plaintiff's substantive claims fail, she "has no viable basis for invoking entitlement to . . . unjust

12  enrichment." *Forouzesh v. Starbucks Corp.*, 2016 WL 4443203, at *5 (C.D. Cal. Aug. 19, 2016).

13          **F.      Plaintiff's Seventh Claim for Trespass to Chattels Should Be Dismissed.**

14          A trespass to chattels occurs "where an intentional interference with the *possession* of

15  personal property causes injury." *Intel Corp. v. Hamidi,* 30 Cal. 4th 1342, 1350–51 (2003). In

16  addition, "decisions finding electronic contact to be a trespass to computer systems have generally

17  involved some actual or threatened interference with the computers' functioning." *Id.* at 1353.

18  Accordingly, allegations of unauthorized cookie placement on a computer device is not trespass to

19  chattels where, as here, Plaintiff alleges only the use of her device and personal information was

20  impaired not that the device was physically impaired *See Doe I v. Google LLC*, 2024 WL

21  3490744, at *8 (N.D. Cal. July 22, 2024) (allegations of unauthorized cookie placement on a

22  device did not constitute trespass to chattels where the device itself was not physically impaired).

23          **V.      CONCLUSION**

24          Because Plaintiff relies on vague and conclusory statements, rather than concrete facts and

25  legal theories, her Complaint in this Action must be dismissed. And because she also cannot

26  amend her Complaint to overcome her fatal pleading deficiencies, Torrid respectfully requests that

27  the Motion be granted and Plaintiff's Complaint be dismissed with prejudice.

28

1    Dated:  October 10, 2025

2                                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4                        By      _____
                                       /s/ Wynter L. Deagle
5                                     WYNTER L. DEAGLE
                                 SAMUEL Z. HYAMS-MILLARD
6                                    TERESA R. MORIN

7                                Attorneys for Defendant Torrid LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4902-2549-4638                 NOTICE OF MOTION AND MOTION TO DISMISS