**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONNI ECHEVERRIA-CORZAN, an individual, on behalf of herself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TORRID LLC,<br><br>Defendant. | CASE NO. 4:25-cv-06926-JD<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT TORRID LLC'S MOTION TO DISMISS COMPLAINT<br><br>Date: December 4, 2025<br>Time: 10:00 a.m.<br>Courtroom: 11<br><br>Hon. James Donato |

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. STATEMENT OF FACTS .......... 2
III. LEGAL STANDARD .......... 3
IV. ARGUMENT .......... 3
  A. Plaintiff Pleads a Concrete Injury. .......... 3
  B. Plaintiff Adequately Pleads Common Law Privacy Claims. .......... 7
  C. Plaintiff Adequately Pleads Violations of CIPA § 631(a). .......... 9
    1. The Third Parties were not parties to the communications. .......... 10
    2. Plaintiff alleges “contents” were intercepted. .......... 11
    3. Plaintiff alleges information was intercepted while in transit. .......... 12
  D. Pen Registers Include Internet Tracking Technologies. .......... 13
  E. Plaintiff Adequately Pleads Fraud, Deceit, and Misrepresentation. .......... 14
  F. Plaintiff’s Unjust Enrichment Claim May Proceed. .......... 15
V. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....3

*Augustine v. Great Wolf Resorts, Inc.*,
No. 23-cv-00281-DMS-DTF, 2024 U.S. Dist. LEXIS 127257
(S.D. Cal. July 18, 2024)....12

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990)....15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....3

*Bohnak v. Marsh & McLennan Cos.*,
79 F.4th 276 (2d Cir. 2023)....5, 6

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)....8, 11

*Byars v. Tire*,
654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2023)....4

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021)....8

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)....3

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. 2025)....passim

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025)....passim

*Gardiner v. Walmart, Inc.*,
No. 20-cv-04618-JSW, 2021 U.S. Dist. LEXIS 211251 (N.D. Cal. July 28, 2021)....6

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....13, 14

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781 (C.D. Cal. 2024)....11

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009)....7

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020),....3, 4, 7, 10

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)....8

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019)....3

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)....8

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....8

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ......................................................................................11

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022)....................................9

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023).............................................................................12

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)..............................................................................11

*Mirmalek v. L.A. Times Communs. LLC*,
No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ..............14

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 U.S. App. LEXIS 21946 (9th Cir. Aug. 26, 2025) .........................................5

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) .................10

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) .........................9

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024).......................................................................13, 14

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) .......................................................................................................8

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) ..............................................................................................3

*Spokeo Inc. v. Robins*,
578 U.S. 330 (2016)..............................................................................................................3

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024)...................11

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-07465 (CRB), 2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025) ..............10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..............................................................................................................3

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023)...............................................................................12

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025).........5, 7, 9

*Yunker v. Pandora Media, Inc.*,
No. 11-CV-03113 JSW, 2013 U.S. Dist. LEXIS 42691 (N.D. Cal. Mar. 26, 2013).................6

**Statutes**

Cal. Penal Code § 631(a)...............................................................................................8, 9

Cal. Penal Code § 638.50(b).............................................................................................12

Cal. Penal Code § 638.51 ....................................................................................11, 12, 13

Cal. Penal Code § 632.01 ..........................................................................................12, 13

Cal. Penal Code § 638.52 .................................................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................3

# I. INTRODUCTION

Plaintiff Sonni Echeverria-Corzan brings this class action suit against Torrid LLC ("Defendant" or "Torrid") for intentionally aiding third parties in the collection of Plaintiff's and other users' private information *against those website users' express instructions*, and in violation of Defendant's *express promise not to do so*. In particular, Defendant surreptitiously placed third-party tracking cookies on Plaintiff's device *after* she explicitly rejected cookies by clicking the "Reject All" button on the below cookie consent banner on Defendant's website:




As a result, Defendant enabled the third parties to collect large swaths of Plaintiff's data, including, without limitation, "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data," despite Defendant's explicit representation that it would disable such transmissions. Plaintiff has properly asserted claims to hold Defendant liable for such misconduct. *See Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *21–22 (N.D. Cal. 2025) (denying motion to dismiss alleging defendant's website violated privacy laws by using tracking cookies after expressly promising it would not do so); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *21 (N.D. Cal. 2025) (same).

Defendant attempts to avoid liability by arguing that Plaintiff lacks standing to sue. But the privacy harms alleged here are concrete under Article III because they are identical or similar to traditionally recognized harms such as invasion of privacy. The Complaint further adequately alleges that Plaintiff had a reasonable expectation of privacy when she clicked the "Reject All" cookies button and browsed the Website and that Torrid's invasion of privacy was highly offensive. Plaintiff has also adequately pled her claims for CIPA violations, fraud, and unjust enrichment.[1]

In sum, the Court should deny Defendant's motion.

[1] Plaintiff does not oppose dismissal of the trespass for chattels claim.

## II. STATEMENT OF FACTS

When consumers visit Defendant's website (www.torrid.com, the "Website"), Defendant displays a pop-up cookie consent banner (depicted above) in which it offers Website users the option to determine how they are tracked and how their personal data is used. ECF 1 ¶ 1. The cookie consent banner states, "We use cookies for marketing and to analyze and improve your experience on our website. By continuing to use our website or closing this banner, you consent to our use of cookies. To learn more, please visit our **<u>Privacy Policy</u>**." *Id.* Defendant then purportedly gives Website users the option, through two interactive buttons, to "Reject All" cookies or "Accept All" cookies, including those used for targeting, performance, and functional purposes. *Id.* ¶¶ 1, 23. Consistent with her typical practice, Plaintiff read the cookie consent banner and clicked the "Reject All" cookies button, "indicating [her] choice and/or agreement to decline or reject all cookies and tracking technologies in use on the Website." *Id.* ¶ 26; *see id.* ¶¶ 84–85.

Despite its representations that users could "Reject All" cookies, "[e]ven after users elect to 'Reject All' cookies, Defendant surreptitiously causes several third parties—including Meta Platforms, Inc. (Facebook), Google LLC (DoubleClick and Google Analytics), ByteDance Ltd. (TikTok), and many more (the 'Third Parties')—to place and/or transmit cookies that track users' website browsing activities and eavesdrop on users' private communications on the Website." *Id.* ¶ 2. Defendant thereby caused the collection and dissemination of users' personal information, "including browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data[]" (collectively "Private Communications"), to the Third Parties. *Id.* ¶ 29; *see id.* ¶ 19.

The Third Parties use the personal information to profile users and target them with advertising for the Third Parties' own financial gain. *Id.* ¶¶ 20, 33, 35–65, 66–82. This is the exact type of tracking and data sharing that Plaintiffs and other Website users sought to avoid when they clicked "Reject All" cookies.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

## IV. ARGUMENT

### A. Plaintiff Pleads a Concrete Injury.

Plaintiff has standing under Article III because she alleges a "concrete" injury, which is one that is "real" as opposed to "abstract," or hypothetical. *See Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016). Alleged intangible harms are concrete if they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," and invasions of privacy (such as disclosure of private information and intrusion upon seclusion) have long been recognized at common law as concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *accord Six v. IQ Data Int'l, Inc*., 129 F.4th 630, 634 (9th Cir. 2025) (the alleged injury must simply be similar in kind to a traditionally recognized harm, such as intrusion upon seclusion). A right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc*., 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). The California Invasion of Privacy Act (CIPA) was "intended to protect these historical privacy rights." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). Accordingly, internet users, such as Plaintiff, who allege that their data was collected in violation of an expectation of privacy have "standing to bring claims for invasion of privacy, intrusion upon seclusion, as well as claims under . . . CIPA, because they adequately alleged privacy harms." *Id.* at 598–99; *accord In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that

a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization.").

In *In re Facebook,* the Ninth Circuit found standing where plaintiffs alleged that Facebook's tracking practices and profiles "would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives," and thus "sufficiently alleged a clear invasion of the historically recognized right to privacy." 956 F.3d at 599.

Here, Plaintiff alleges she suffered concrete harm when Defendant represented that she could reject being tracked by third-party cookies on the Website but Defendant still caused the Website to place such cookies on her device, thereby enabling the Third Parties to collect wide swaths of Plaintiff's detailed and personal data and communications. ECF 1 ¶¶ 1–5, 18–65, 83–89. Despite Defendant's suggestion to the contrary, Plaintiff identifies the specific categories of data collected by third parties against her express wishes and contrary to Defendant's representations. *See* ECF 1 ¶¶ 3, 18, 29, 32, 35–65.[2] And, like in *In re Facebook*, the tracking continues across websites and across multiple browsing sessions, for the purpose of compiling extensive user profiles. ECF 1 ¶¶ 18, 33. These allegations set forth a concrete harm to Plaintiff's privacy interests that are similar in kind to traditionally recognized harms (indeed, her claims for invasion of privacy and intrusion upon seclusion are historically recognized causes of action). *See In re Facebook*, 956 F.3d at 598–99. Courts in this District have repeatedly found standing in cases involving substantially the same alleged conduct, harm, and claims. *See, e.g., Motorola*, 2025 U.S. Dist. LEXIS 133836, at *16–17 ("Gabrielli's allegations that Motorola deprived him

---

[2] These allegations completely refute Defendant's argument that Plaintiff "provides no information about her Website visit or the information collected about her" (ECF 16 at p. 2–3). *See Motorola*, 2025 U.S. Dist. LEXIS 133836, at *16 (rejecting defendant's argument that plaintiff only described data that Motorola *could have* collected) . Moreover, courts have consistently refused to require plaintiffs to plead the *exact* communications they had with websites. *See, e.g.*, *Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2023) (stating that "[t]here is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear"; "[plaintiff] merely needs to show that the contents were not record information such as her name and address"). Plaintiff's identification of the specific categories of information that *are* collected from him and all similarly situated is sufficient.

control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *accord Haleon*, 2025 U.S. Dist. LEXIS 169503, at *15 (same); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, at *29 (N.D. Cal. Oct. 16, 2025) (finding "loss in the privacy of such data supports Article III standing").

The Ninth Circuit recently reiterated that courts "assess whether 'plaintiffs have identified a close historical or common-law analogue for their asserted injury,'" and found no need to revisit the conclusions reached in *In re Facebook* and *Eichenberger* (while cautioning against an overly expansive reading of those cases). *See Popa v. Microsoft Corp.*, No. 24-14, 2025 U.S. App. LEXIS 21946, at *24 (9th Cir. Aug. 26, 2025).[3] After noting that the decision in *In re Facebook* was based on Facebook's tracking practices and compilations of large profiles without users' consent, the court found that the decision in *In re Facebook* properly "accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries." *Id.* at *23–24. That same reasoning requires denying Defendant's motion here. Indeed, Defendant's conduct caused a *more egregious version* of the historical harm implicated in *Facebook*: not only did Defendant enable broad tracking of users across multiple websites without their consent regardless of the sensitivity of the activities and communications (the same harm that the Ninth Circuit has found sufficient for standing, *see Popa,* 2025 U.S. App. LEXIS 21946, at *23–24), but Defendant did so in defiance of its promise not to. ECF 1 ¶¶ 1–5, 31–33, 88.

In arguing that "the mere disclosure of the Plaintiff's information does not, standing alone, establish the injury in fact required for Article III" (ECF 16 at 2), Defendant both (a) ignores the directly applicable cases discussed above and (b) mischaracterizes the Second Circuit law that it cites. Most notably, in *Bohnak v. Marsh & McLennan Cos.*, the Second Circuit found that the exposure of the plaintiff's private information to unauthorized third parties "bears

---

[3] The portions of *Popa* finding that the plaintiff did not adequately plead standing in that case are distinguishable. In *Popa*, the session replay software was limited to collecting data about the use of a single website for the defendant's *own use*. 2025 U.S. App. LEXIS 21946, at *3–5. Here, by contrast, Defendant causes tracking beyond its own website and for the benefit of third parties, who build profiles as in *In re Facebook*. Also, in *Popa*, the defendant did not seek plaintiff's consent, create an expectation of privacy, and then defy plaintiff's rejection of the software.

some relationship to a well-established common-law analog: public disclosure of private facts," and that was so "without regard to whether the third parties used the information to cause additional harm." 79 F.4th 276, 285 (2d Cir. 2023). The court further explained that "[i]n *TransUnion* itself, the Supreme Court specifically recognized that 'disclosure of private information' was an intangible harm 'traditionally recognized as providing a basis for lawsuits in American courts;'" and concluded that the alleged exposure of the plaintiff's private information "falls squarely within the scope of an intangible harm the Supreme Court has recognized as 'concrete.'" *Id.* at 286. Defendant's suggestion that *Bohnak* somehow supports its motion is thus badly misguided.

Similarly, Defendant's argument that Plaintiff must allege that she was deprived of some economic value by the collection of the data at issue (ECF 16 at 2) again both mischaracterizes and ignores the applicable case law. The cases cited by Defendant concern what is required to sufficiently allege a diminution in value of certain information, but they do not suggest that is the *only* harm a plaintiff can allege in a privacy case. *See Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 U.S. Dist. LEXIS 42691, at *13, *17 (N.D. Cal. Mar. 26, 2013) (plaintiff did not sufficiently allege a diminution in value of his personal information but sufficiently alleged a violation of his constitutional privacy rights); *Gardiner v. Walmart, Inc.*, No. 20-cv-04618-JSW, 2021 U.S. Dist. LEXIS 211251, at *7 (N.D. Cal. July 28, 2021) (finding plaintiff did not sufficiently allege diminution in value of his personal information for purposes of compensable damages element of certain claims, without discussing Article III standing). Although the diminution in value of personal information can be a cognizable harm, that is not the only or primary type of harm in privacy cases. *See, e.g., In re Facebook*, 956 F.3d at 599 (a plaintiff can be harmed by loss of control over personal information), 606 (noting a plaintiff can seek disgorgement of profits regardless of whether defendant made plaintiff's property less valuable). As explained both above and below, Plaintiff alleges the invasion of her privacy and communications and the loss of control over her personal information, after being assured she could retain control over that information.

**B. Plaintiff Adequately Pleads Common Law Privacy Claims.**

California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require that Plaintiff show: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook*, 956 F.3d at 606; *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009). Plaintiff plainly alleges both elements. ECF 1 ¶¶ 1–5, 25–29, 32, 83–89, 102–06, 113–16.

Disputing Plaintiff's allegations, Defendant argues that she did not have a reasonable expectation of privacy because website users should reasonably expect websites to collect "browsing activities." ECF 16 at 3–4. But Plaintiff does not simply allege that Defendant violated her privacy by itself collecting her browsing activity on the Website; rather, she alleges that Defendant knowingly assisted *third parties* in collecting large swaths of her data and communications—including "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data"—***after specifically representing*** to Plaintiff that it would not do so and that Plaintiff could browse the Website without being tracked and without her data and communications being shared with third parties. ECF 1 ¶¶ 1–5, 25–29, 32, 102–06, 113–16.

Given Defendant's ***own representations*** and the scope of the information gathered in direct violation of those representations, Plaintiff plausibly alleges that she had a reasonable expectation in the data and communications at issue and that Defendant's conduct was highly offensive. *Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *37–39 (finding plaintiffs plausibly alleged that (a) "Dollar Tree *itself* creates a reasonable expectation of privacy when it presents customers with a Cookie Banner permitting them to 'Reject Advertising Cookies'" and (b) the collection of plaintiffs' browsing history, user input data, and geolocation data constituted highly offensive conduct, "considering the 'plus factor' of alleged deceit on the part of Dollar Tree in collecting such information via the Cookie Banner"); *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *23 (court could not conclude on a motion to dismiss that the "alleged transmission via stored

cookies of [plaintiff's] browsing data, visit history, website interactions, geolocation information, user input data (including search terms), and other types of data is not a highly offensive invasion of his reasonable privacy expectation"); *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *27 (same); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 937–39 (N.D. Cal. 2023) (Google itself "told users that they could 'go Incognito' and 'browse privately,'" and thus "[b]y browsing privately, plaintiffs could be said to have asserted their expectation of privacy"); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021) (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's own representations that it would not receive such data).

None of Defendant's cases (ECF 16 at p. 4) are on point because none of them address a situation where the defendant enabled third parties to collect a user's data in violation of an *express assurance that such data would not be collected or shared*. Even "more routine data collection practices may be highly offensive if a defendant disregards consumers' privacy choices while simultaneously 'h[olding] itself out as respecting' them." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 292 (3d Cir. 2016)). Moreover, "'courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is.'" *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26 (quoting *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019)**Error! Bookmark not defined.**).

Defendant further attempts to distinguish a disclosure from an intrusion and argues that "Plaintiff also fails to plead an actionable intrusion." ECF 16 at 4. This argument is baseless. Plaintiff alleges that Defendant used code on its Website to place cookies on and to transmit cookie information from *Plaintiff's device*, thereby causing substantial amounts of Plaintiff's data (which Plaintiff affirmatively sought to protect by selecting the option to reject all cookies) to be collected by the Third Parties. ECF 1 ¶¶ 3, 5, 16, 19, 85–88. Even the case cited by Defendant acknowledges that an actionable intrusion can occur through "unwanted access to [plaintiff's] data" where "the plaintiff had an objectively reasonable expectation of seclusion or solitude in the . . . data source." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 232 (1998). As

explained above, and supported by numerous cases, Plaintiff has adequately pled claims for invasion of privacy and intrusion upon seclusion.

### C. Plaintiff Adequately Pleads Violations of CIPA § 631(a).

Plaintiff alleges a claim under the fourth clause of Section 631(a). That clause imposes liability on Defendant to the extent it *aided, agreed with, or conspired with third parties* to violate any of the first three prongs of Section 631(a), namely: (1) intentionally wiretapping Plaintiff's communications, (2) willfully and without consent attempting to learn the contents or meaning of any communication in transit (i.e., eavesdropping), and/or (3) attempting to use or communicate information obtained as a result of either of the two previous activities. Cal. Penal Code § 631(a); *Rodriguez v. Ford Motor Co.*, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024). "Though written in terms of wiretapping, Section 631(a) applies to Internet communications." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022); *see also Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *45 n.10 (noting "numerous other cases hav[e] applied Section 631(a) to internet communications").[4]

Here, Plaintiff alleges Defendant aided the Third Parties in their violation of the second and third clauses of Section 631(a). ECF 1 ¶¶ 129–140.[5] Plaintiff alleges that Defendant integrated the Website with code that enables the Third Parties to use cookies to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." ECF 1 ¶ 34. The Complaint includes extensive allegations describing how the cookies placed by the Third Parties transmit communications "in real time." *See, e.g., id.* ¶¶ 19, 29, 35–65. Plaintiff further demonstrates the plausibility of these allegations by including screenshots showing network traffic that occurs after a user rejects all cookies using the Website's cookie banner and proceeds to browse the Website. *Id.* ¶¶ 30–31.

[4] Defendant argues that the first clause of CIPA, in particular, does not apply to internet communications (ECF 16 at 6), but that contention is academic as the first clause is not at issue.

[5] Defendant argues that it is not directly liable to Plaintiff under the first three clauses of CIPA (ECF 16 at 6–9), but Plaintiff does not allege such direct liability and therefore responds only with respect to the theories actually pled.

Defendant argues that Plaintiff's claim under Section 631(a) should be dismissed because: (a) the Third Parties were actually parties to Plaintiff's communications and thus there can be no violation of Section 631(a) by those Third Parties or by Defendant; (b) Plaintiff does not allege the interception of the "contents" of any communication; and (c) Plaintiff does not allege that any communications were intercepted "in transit." Each of these arguments fails.

**1. The Third Parties were not parties to the communications.**

In direct opposition to both Plaintiff's allegations and Ninth Circuit law, Defendant argues that "both Torrid and the third parties referenced in the Complaint were parties to the purported communications with Plaintiff" and "no CIPA liability arises if the third party allegedly 'intercepting' or 'eavesdropping' is a tool, agent, or extension of the website operator." ECF 16 at 5–6. There is no merit to this argument. Plaintiff alleges that Torrid expressly represented (through its pop-up cookie banner) that the Third Parties would ***not*** be parties to such communications, but Defendant nonetheless enabled the Third Parties "to surreptitiously track in real time and collect Website users' personal information." ECF 1 ¶¶ 12, 19, 27, 31. Plaintiff further alleges, and Defendant even acknowledges in its own published policies, that the Third Parties use and monetize the intercepted Private Communications *for their own purposes*. ECF 1 ¶¶ 23, 24, 33, 130, 135. Plaintiff certainly does not identify the Third Parties as direct or intended parties to the communications at issue (and exempt from CIPA liability); to the contrary, she alleges they were unauthorized eavesdroppers. ECF 1 ¶¶ 34, 121–40.

Moreover, the Ninth Circuit has already rejected the argument made by Defendant here, explaining that "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception" for CIPA liability. *In re Facebook*, 956 F.3d at 608**Error! Bookmark not defined.** (finding that Facebook was not exempt from liability under CIPA and rejecting its theory that it was a party to the communications at issue). District courts in California have also rejected Defendant's argument. *See Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 U.S. Dist. LEXIS 73736, at *8–9 (N.D. Cal. Apr. 17, 2025) ("If software essentially functions as a wiretap that redirects a plaintiff's communications with a website page to a marketing company that can use the data for its own ends, under section

631, the marketing company is not a party to the communication."); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *4 (N.D. Cal. Oct. 23, 2019) ("But it cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly."); *accord Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 844 (S.D. Cal. 2024).

**2. Plaintiff alleges "contents" were intercepted.**

CIPA prohibits interception of "contents" of communications. "Contents" of communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Here, in addition to and despite her communication that she did not want to be tracked, Plaintiff alleges third parties obtained her interests, preferences, behavior, and user input data (such as search queries and her personal information) as she used the Website. ECF 1 ¶¶ 19 (describing user input data), 32 (user input data was transmitted), 53 (Facebook cookies collect, *inter alia*, user input data), 57 (TikTok cookies collect, *inter alia*, user input data).

Despite these allegations, Defendant asks this Court to rule *on the pleadings* that all of the information alleged to have been intercepted by the Third Parties is merely "record information." ECF 16 at 6–7. But Defendant cannot so easily override Plaintiff's allegations that the contents of communications were intercepted. *See Haleon*, 2025 U.S. Dist. LEXIS 169503, at *31 (holding "contents" of communication were sufficiently alleged when plaintiff "identifies the information collected as 'the Website user's affirmative decisions, actions, choices [and] preferences,' including 'user input data' such as 'search queries, the user's name, age, gender, email address, location, and/or payment information'"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *Zynga*, 750 F.3d at 1108–09 (URL data can contain contents of communications); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *11 (N.D. Cal. Oct. 1, 2024) ("Descriptive URLs that reveal specific

information about a user's queries reflect the 'contents' of a communication."); *Brown*, 685 F. Supp. 3d at 936 ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944–45 (N.D. Cal. 2023) (finding allegations regarding user input data to sufficiently allege contents of communications).

Defendant cites one case that decided information entered into a website did not constitute contents of a communication unless it was actually sent to the retailer (i.e., by placing an order). *See Augustine v. Great Wolf Resorts, Inc.*, No. 23-cv-00281-DMS-DTF, 2024 U.S. Dist. LEXIS 127257, at *15 (S.D. Cal. July 18, 2024). But *Augustine* did not involve either an express communication agreeing to not track or the type of third-party tracking at issue in this case, and its view of "contents" is outside the norm.

**3. Plaintiff alleges information was intercepted while in transit.**

For Plaintiff's eavesdropping claim, "the interception must occur contemporaneous with the sending or receipt of the message." *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). Plaintiff clearly alleges that timing element. ECF 1 ¶¶ 3 (the cookies "permitted the Third Parties to track and collect data in real time"), 29 (the cookies enabled third parties "to collect user data in real time that discloses Website visitors' Private Communications"), 31 (interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains), 88 ("Defendant permitted the Third Parties to track and collect Plaintiff's Private Communications as Plaintiff browsed the Website"), 133 (third parties "read, attempted to read, and/or learned the contents or meaning of electronic communications . . . while the electronic communications were in transit"). Plaintiff further identifies specific examples of cookies transmitting data in *real time*. ECF 1 ¶¶ 35–65. Thus, Defendant's contention that "Plaintiff has failed to plead facts showing that the interception was *contemporaneous* with the sending or receipt of a communication" (ECF 16 at 8) must be rejected.

**D. Pen Registers Include Internet Tracking Technologies.**

In her fourth cause of action, Plaintiff alleges that Defendant's conduct violates CIPA section 638.51, which prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." ECF 1 ¶¶ 141–151. Under CIPA, a "pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiff alleges that the Third Party cookies and the corresponding software code installed by Defendant on its Website operate as pen registers under the meaning of the statute because they record users' IP address and user-agent information, which is "routing, addressing, or signaling information." ECF 1 ¶¶ 144–145.

The definition of pen register is "expansive": "specific as to the type of data a pen register collects," but "vague and inclusive as to the form of the collection tool" (i.e., a "device or process"). *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023)**Error! Bookmark not defined.** (explaining "[a] process can take many forms," and that "[s]urely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'"). "All that is required is that the [tracking software] record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024). "Based on the expansive statutory definition of a pen register, tracking software could plausibly constitute a pen register under §§ 638.50 and 638.51." *Id.* at 931 (internal quotation marks and citation omitted).

Defendant argues that section 638.51 applies only to telephone communications, not website interactions. ECF 16 at 9–14 (discussing (a) other provisions of CIPA;[6] (b) legislative

[6] Defendant argues that references to telephones in section 638.52 should be taken as a limitation on the meaning of "pen register" in sections 638.50 and 638.51. But that is backwards: "If the drafters of Section 638.50 had intended for 'pen register' to be limited to telephone technologies, they knew how to do so—as evidenced by other sections of CIPA where they imposed such limitations." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *30. Defendant understands this

history; (c) supposed tension with the CCPA; and (d) a public policy argument). But courts in this District have repeatedly rejected this argument because it is contrary to the statute's plain language. *See, e.g.*, *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *31–32 ("Haleon argues that internet technologies are not 'pen registers.' . . . This argument has been considered and rejected multiple times.") (collecting cases); *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *30 (rejecting the argument "that the legislative history of Section 638.51 . . . indicates that the statute applies only to telephones"); *Mirmalek v. L.A. Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, at *7–10 (N.D. Cal. 2024) (rejecting argument that internet tracking technologies cannot be pen registers under CIPA); *Greenley*, 684 F. Supp. 3d at 1050 (same). "[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there. . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Shah*, 754 F. Supp. 3d at 929.

Like the plaintiffs in *Haleon, Motorola*, and other cases, Plaintiff alleges that the Third Party cookies and the corresponding software code installed by Defendant on its Website are each a "device or process" that capture and record "routing, addressing, or signaling information." ECF 1 ¶ 145. Thus, Plaintiff adequately alleges a claim under section 638.51.

### E. Plaintiff Adequately Pleads Fraud, Deceit, and Misrepresentation.

Despite Torrid's assertion to the contrary (ECF 16 at 14–15), Plaintiff adequately pleads "the who, what, when, where, and how" of the alleged fraud and misrepresentations. The "who" is Defendant. The "when" and "where" is each time users visited Defendant's Websites and clicked "Reject All."[7] The "what" and "how" are: the use of Third Party code and cookies on the Website, the use of a pop-up cookie banner that offers users the option to "Reject All" cookies, and the enabling of Third Parties to collect Website users' Private Communications by placing

---

interpretive principle; in fact, it tries to use it in arguing that a reference to the internet in a completely separate provision (section 632.01), indicates (by way of contrast) that the legislature did not intend for pen registers to encompass internet technologies. But section 632.01 (enacted after the pen register sections) concerns penalties for the distribution of medical information obtained by wiretapping or eavesdropping, not the use of a pen register. Section 632.01 thus offers no insight into the meaning of "pen register."

[7] Defendant argues that Plaintiff "does not even allege *the date* she visited the Website." ECF 16 at 14. But Plaintiff alleges she visited the Website "on or around November 2024." ECF 1 ¶ 83. Further precision is not required.

cookies on and transmitting cookie information from users' devices even after those users opted to "Reject All" cookies. *See, e.g.*, ECF 1 ¶¶ 1–5, 25–34, 89–90, 152–163 (alleging fraud); ¶¶ 12–24, 84, 153–155 (alleging intentional conduct); ¶¶ 85–87, 155–157, 160 (alleging reliance); ¶¶ 66–82, 89–90, 158–159, 161–163 (alleging injury). These allegations are sufficient.

Defendant next argues that "Plaintiff's subjective belief that clicking 'Reject All' would stop Torrid from using all cookies on the Website based on the wording and placement of a button do not amount to a false statement of material fact by Torrid." ECF 16 at 14. But Plaintiff plausibly alleges that she and reasonable consumers understood the "Reject All" button to mean that third-party cookies and tracking would be disabled while browsing the Website. That understanding is affirmed by Defendant's Privacy Policy, which states "You can disable the sharing of your personal information for cross-contextual behavioral advertising or targeted advertising through online cookies and tracking technology." ECF 1 ¶ 24. Plaintiff adequately alleges that Defendant misrepresented to her that she could reject cookies.

### F. Plaintiff's Unjust Enrichment Claim May Proceed.

"Courts in this District have regularly held that even if plaintiffs have suffered no economic loss from the disclosure of their plausibly private information, they are allowed to proceed through the pleadings stage with a claim for unjust enrichment to recover the gains that a defendant realized from its allegedly improper conduct." *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *41. Here, Plaintiff has adequately alleged that it would be unjust for Defendant to retain the benefit of invading Plaintiff's and Class members' privacy and any profits earned thereon. ECF 1 ¶¶ 164–73.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss. In the alternative, Plaintiff requests leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect").

Dated: November 7, 2025

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*