SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
TERESA R. MORIN, Cal Bar No. 351874
tmorin@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

SAMUEL Z. HYAMS-MILLARD, Cal Bar No. 317941
shyams-millard@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947Attorneys for

Defendant Torrid LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| SONNI ECHEVERRIA-CORZAN, an individual, on behalf of herself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TORRID LLC,<br><br>Defendant. | Case No. 3:25-cv-06926-JD<br><br>**TORRID LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: January 29, 2026<br>Time: 10:00 a.m.<br>Crtrm.: 11<br><br>Judge: Hon. James Donato<br><br>Trial Date: Not Set |

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. PLAINTIFF FAILS TO ALLEGE ARTICLE III STANDING .......... 1

III. PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW .......... 4

A. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail .......... 4

B. Plaintiff's CIPA § 631(a) Claim Fails as a Matter of Law .......... 6

1. The Party Exception Applies .......... 6

2. Plaintiff Does Not Allege Interception of "Contents" .......... 8

3. Plaintiff Does Not Plausibly Allege Interception Occurred "In Transit" .......... 8

C. Plaintiff Still Does Not State a Cognizable Claim Under CIPA § 638.51 .......... 8

D. Plaintiff's Fraud Claim Still Fails Under Rule 9(b) .......... 10

E. Plaintiff Fails to Allege Unjust Enrichment .......... 10

IV. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Anne Heiting v. HP Inc.*
2025 WL 2993673 (Cal.Super. Aug. 01, 2025) ........ 9

*Augustine v. Great Wolf Resorts, Inc.*
2024 WL 3450967 (S.D. Cal. July 18, 2024)........ 6, 8

*Brown v. Google LLC*
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 4, 5

*Calhoun v. Google LLC*
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 4, 5

*Cody v. Boscov's, Inc.*
658 F.Supp.3d 779 (C.D. Cal. 2023)........ 7

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020)........ 1, 2, 3, 7

*Gabrielli v. Haleon US Inc.*
2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025)........ 3, 4

*Gabrielli v. Motorola Mobility LLC*
2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) ........ 3, 4

*Hughes v. Vivint, Inc.*
2024 WL 5179916 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024)........ 2

*I.C. v. Zynga, Inc.*
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 5

*Kearns v. Ford Motor Co.*
567 F.3d 1120 (9th Cir. 2009)........ 10

*Khamooshi v. Politico LLC*
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........ 1, 2

*Kishnani v. Royal Caribbean Cruises Ltd.*
2025 WL 1745726 (N.D. Cal. June 24, 2025) ........ 2

*Licea v. Hickory Farms*
LLC, 2024 WL 1698147 (Cal.Super. March 13, 2024) ........ 9

*Mikulsky v. Bloomingdale's, LLC*
713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ........ 7

*Mikulsky v. Noom, Inc.*
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........................................ 1, 2

*Oganyan v. Biolife Plasma Servs. L.P.*
2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) ........................................ 2

*People v. Trimble*
16 Cal. App. 4th 1255 (1993) ........................................ 9

*Popa v. Microsoft Corp.*
153 F.4th 784 (9th Cir. 2025) ........................................ 1, 3

*Popa v. PSP Grp., LLC*
2023 WL 7001456 (W.D. Wash. Oct. 24, 2023) ........................................ 1, 2

*Sanchez v. Cars.com Inc.*
2025 WL 487194 (Cal.Super. Jan. 27, 2025) ........................................ 9

*Thomas v. Papa Johns Int'l, Inc.*
2024 WL 2060140 (S.D. Cal. May 8, 2024) ........................................ 6

*Torres v. Prudential Financial, Inc.*
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........................................ 7

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) ........................................ 1, 2

*Valenzuela v. Keurig Green Mountain, Inc.*
674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) ........................................ 8

*In re Vizio, Inc.*
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................ 5, 6

*Walsh v. Dollar Tree Stores, Inc.*
2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025) ........................................ 3, 4

<u>Statutes</u>

18 U.S.C. § 2510 (1986) ........................................ 9

Cal. Penal Code § 629.51 ........................................ 9

Cal. Penal Code § 638.50 ........................................ 9

Cal. Penal Code § 638.51 ........................................ 8, 9

Cal. Penal Code § 638.52 ........................................ 8, 9

<u>Other Authorities</u>

Fed. R. Civ. Proc. 8 ........................................ 7

Fed. R. Civ. Proc. 9(b) .......................................................................................................... 10

## I. INTRODUCTION

The Opposition serves only to highlight the Complaint's numerous pleading deficiencies. Plaintiff's allegations neither establish Article III standing nor any viable claims for relief, and her Opposition cannot correct these failures. Plaintiff's Complaint should be dismissed with prejudice.

## II. PLAINTIFF FAILS TO ALLEGE ARTICLE III STANDING

Plaintiff's reliance on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), for the proposition that "internet users … who allege that their data was collected in violation of an expectation of privacy have standing" is misplaced. While a privacy injury can be concrete, not every alleged statutory violation automatically satisfies Article III. Here, it does not.

As the Supreme Court made clear in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021), "the creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." Post-*TransUnion*, an "injury in law is not an injury in fact." *Id*. at 426. Only plaintiffs who have been *concretely harmed* by a defendant's statutory violation have standing. *Id.* Numerous courts—including the Ninth Circuit—have applied this principle to privacy claims. *See e.g., Popa v. Microsoft Corp.*, 153 F.4th 784, 794 (9th Cir. 2025) (the court's prior analysis in *In re Facebook* "finds no support in *TransUnion.*"); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1180 (N.D. Cal. 2025) (rejecting reliance on *In re Facebook* because *TransUnion* requires a showing of concrete harm); *Popa v. PSP Grp., LLC*, 2023 WL 7001456, at *4 (W.D. Wash. Oct. 24, 2023) (same).

Post-*TransUnion*, courts must examine the nature of the "specific information at issue" to determine whether a legally protectable privacy interest exists. *Khamooshi*, 786 F. Supp. 3d at 1178 (quoting *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023)). Where claims are based on disclosure of information, a plaintiff must identify the "specific personal information she disclosed that implicates a protectable privacy interest." *See Khamooshi*, 786 F. Supp. 3d at 1178. Otherwise, every unauthorized disclosure would confer standing—an outcome *TransUnion* forbids.

Plaintiff does not meet this standard. She points solely to allegations that certain technologies were ***capable*** of collecting "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information,

referring URLs, session information, user identifiers, and/or geolocation data." (Opp. at 4:13-15.) But she never alleges which of these categories were actually collected about her. Notably absent from Plaintiff's Opposition is any allegation identifying which data, if any, was collected from her. Rather than plead facts, Plaintiff merely recites a laundry list of theoretical categories of data that certain technologies are capable of collecting in the abstract. Post *TransUnion*, such speculation cannot establish standing.

Further, Plaintiff admits that user identifiers were generated by third-party technologies, not provided by her, and does not allege that she entered any information into form fields. *See* Compl. ¶ 51. These omissions are fatal. *See Popa*, 2023 WL 7001456, at *2 (no standing where plaintiff failed to allege "that she entered any personally identifiable information into PSP's website, that such information was captured by Defendants, or that Defendants were able to connect the information Clarity collected to her identity"); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4-5 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) ("As Plaintiff does not clearly allege what personalized information of hers was actually collected, she does not identify any harm to her privacy.")

Nor does Plaintiff allege disclosure of information that bears a "close relationship to harms traditionally recognized" at common law. *Khamooshi*, 786 F. Supp. 3d at 1180 (*citing TransUnion*, 594 U.S. at 425). A "concrete injury arises only where the alleged harm involves personal information—and specifically, information whose disclosure would be considered 'highly offensive to a reasonable person.'" *Khamooshi*, 786 F. Supp. 3d at 1180. Courts consistently hold that routine data—such as IP addresses, referral URLs, session or device information, and website interactions—does not meet this threshold. *See Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3-4 (N.D. Cal. June 24, 2025) (TikTok extracted device and browser information, geographic information, name, date of birth, address, referral tracking and URL tracking to personally identify each site visitor); *Khamooshi*, 786 F. Supp. 3d at 1182; *Mikulsky*, 682 F. Supp. 3d at 864; *Oganyan v. Biolife Plasma Servs. L.P.*, 2025 WL 2979619, at *3–4 (E.D. Cal. Oct. 22, 2025).

Plaintiff's allegations stand in stark contrast to *In re Facebook*, which concerned Facebook's collection of ***large amounts of sensitive information*** from ***multiple websites*** over a ***significant***

***amount of time*** and ***after users logged out*** of their Facebook accounts which the court described as a "***cradle-to-grave profile***" of users. *See In re Facebook*, 956 F.3d at 598.[1]

The Ninth Circuit's recent decision in *Popa v. Microsoft Corp.* underscores this point. There, the plaintiff alleged she visited the defendant's website, clicked on various products, and that Microsoft's technology collected over 30 categories of data—including visit dates, device type, browser type, operating system, country of access, mouse movements, screen swipes, text input, and scroll depth. 153 F.4th at 786. The district court dismissed for lack of standing, finding this information was "not the type of private information that the law has historically protected." *Id.* at 787. The Ninth Circuit affirmed holding that Popa failed to meet her burden to demonstrate Article III standing: "Popa does not explain how the tracking of her interactions with the PSP website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." In sum, the Court held, "Popa identifies no embarrassing, invasive, or otherwise private information collected by Clarity. Indeed, the monitoring of Popa's interactions with PSP's website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." Plaintiff's allegations here are equally weak and insufficient.

Finally, Plaintiff does not dispute that she has failed to properly plead economic loss or diminution in value of her personal information, asserting instead that this is not the only harm that can be alleged. (Opp. at 6:10–27.) But because Plaintiff fails to allege any concrete injury, she lacks Article III standing. Her claims should be dismissed under Rule 12(b)(1).

[1] Plaintiff also relies on unpublished decisions from cases involving Plaintiff's counsel's firm and comparable allegations of the categories of information collected in this matter (despite different web tracking technologies being alleged). *See Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *16 (N.D. Cal. July 14, 2025); *Gabrielli v. Haleon US Inc.*, 2025 U.S. Dist. LEXIS 169503, at *14–15 (N.D. Cal. Aug. 29, 2025); *Walsh v. Dollar Tree Stores, Inc.*, 2025 U.S. Dist. LEXIS 204652, at *36 (N.D. Cal. Oct. 16, 2025). Torrid respectfully submits that these cases were wrongly decided because they do not meaningfully apply the post-*TransUnion* standard, confirmed by the Ninth Circuit in *Popa,* requiring assessment of the level of sensitivity of the information collected and disclosed to establish a concrete and particularized injury.

## III. PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW

### A. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail

Plaintiff asserts that she had a reasonable expectation of privacy in "all her data and communications" based on Torrid's "own representations." (Opp. at 7:8–8:9.) But the cases she cites—and the law generally—make clear that whether such an expectation exists depends on the nature and sensitivity of the information collected, not on conclusory statements. Torrid does not contend that a reasonable expectation of privacy can never exist; rather, as the cited authorities confirm, courts routinely hold that common, non-sensitive information transmitted during routine website visits does not give rise to such an expectation. (See Mot. at 3:28–4:6.)

Plaintiff cites a handful of cases to support the statement that she "had a reasonable expectation in the data and communications at issue and that Defendant's conduct was highly offensive." (Opp. at 7:19–20:9.) *Brown* and *Calhoun* are distinguishable in that they each involve ***large amounts* of *sensitive* information** collected from ***multiple* websites *by a third party that did not own the website***. They focus not just on the manner in which the data was collected but also: (1) the type of information; (2) the sensitivity of that information; and (3) the amount of information, to determine if a reasonable expectation of privacy exists. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021) (finding that Google Chrome users had alleged a reasonable expectation of privacy based on "the amount of data collected, the sensitivity of the data collected, and the nature of the data collection" and "based on Google's representations, Plaintiffs could have reasonably assumed that Google would not receive their data while they were not synced" and visiting websites that Google did not own); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1077 (N.D. Cal. 2021) (finding a reasonable expectation of privacy where Google Chrome users were browsing websites Google did not own in incognito mode and data was collected by Google from all such website visits).[2]

Here, Plaintiff alleges only that Torrid collected data during her visit to Torrid's website.

[2] As discussed above, *Motorola*, *Haleon*, and *Dollar Tree* are outliers that improperly brush over these standards, especially the sensitivity and amount of the information. Applying those standards, Plaintiff had no reasonable expectation of privacy to the common device and browsing information.

She does not allege facts showing that Torrid collected sensitive information, aggregated data across multiple websites, or engaged in any conduct beyond ordinary website operations. Her assertion that Torrid "knowingly assisted third parties in collecting large swaths of her data and communications" (Opp. at 7:12–18) is entirely conclusory and unsupported by factual allegations.

The cases Plaintiff relies on—*Calhoun* and *Brown*—underscore this point. Both involved Google's collection of extensive, sensitive data from users browsing third-party websites in private browsing mode, contrary to Google's representations. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1077 (N.D. Cal. 2021). Those courts emphasized three factors: (1) the type of information collected; (2) its sensitivity; and (3) the amount of data collected. Plaintiff alleges none of these here. Instead, she identifies only routine browsing data—IP addresses, URLs, device identifiers, and timestamps—which courts have repeatedly held are not private or sensitive. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) ("[T]he Court is hard pressed to conclude that basic contact information, including one's email address, phone number, or Facebook or Zynga username, is private information"). Users should reasonably expect such data to be collected when visiting a website. Plaintiff therefore fails to plead facts establishing a reasonable expectation of privacy.

Plaintiff does not allege any specific facts showing there was a large collection of data or that it was collected from multiple visits across multiple sites by a third-party. Further, information common to browsing activities, such as IP addresses, URLs, webpage keywords, date and time of website visits, device identifiers, and pages visited, are not sensitive personal information. And Plaintiff does not allege any facts establishing otherwise. Nor could she, this type of information is routinely collected when a user visits a website and web users should reasonably expect these types of data to be collected during their visit. Plaintiff has no reasonable expectation of privacy under these circumstances. *See* Mot. at 3:28–4:6

Plaintiff's reliance on *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017), is misplaced. That case involved the covert collection of highly sensitive viewing data from smart TVs—conduct the court expressly distinguished from "routine" practices like the use of cookies to collect data. *Id.* at 1233. The *Vizio* court itself cautioned that courts are "hesitant to extend the tort

of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications," and that only the collection of "intimate or sensitive" information may qualify as highly offensive. *Id.* Plaintiff alleges nothing of the sort. Her claim rests on the collection of ordinary website data, which courts have consistently found insufficient to support an intrusion claim.

Plaintiff also argues that the Court need not decide if an intrusion is "highly offensive" at the pleading stage. (Opp. at 8:16–19.) While courts have noted that this analysis can be fact-intensive, Plaintiff *must still plead facts* that plausibly support that element. She has not. *See Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *7 (S.D. Cal. May 8, 2024) (granting motion to dismiss and dismissing intrusion upon seclusion claim because "Plaintiff has failed to allege sufficient, specific facts to support either the 'reasonable expectation of privacy' or 'highly offensive' prongs of her intrusion upon seclusion claim").

**B. Plaintiff's CIPA § 631(a) Claim Fails as a Matter of Law**

Plaintiff's claim under CIPA § 631(a) cannot survive Rule 12(b)(6) scrutiny because her allegations fail to establish any violation under Clauses 1, 2, or 3 of the statute. Consequently, her derivative aiding-and-abetting theory under Clause 4 necessarily fails. *See Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024). Plaintiff's opposition rests on three flawed premises: (1) that the party exception does not apply; (2) that the "contents" of her communications were intercepted; and (3) that the alleged interception occurred while the contents were "in transit." Each argument is legally and factually deficient.

**1. The Party Exception Applies**

Plaintiff's attempts to avoid the party exception by asserting that Torrid enabled third-party cookies to "surreptitiously track in real time and collect Website users' personal information" (Opp. at 10:11-19), is unavailing. Critically, Plaintiff does not allege that any third party used her data for purposes independent of Torrid or outside the context of her visit to the Website. This omission is fatal.

As explained in the Motion to Dismiss, while there is a split of authority regarding whether Plaintiff is required to plausibly plead actual use of the contents of her communications by the

third-parties, the better reasoned cases hold that when a third party acts as a tool, agent, or extension of the website operator, no liability under CIPA exists. (Mot. at 5:24-6:6.) Plaintiff alleges only what third parties could do—not what they actually did. Bare speculation about technical capability does not satisfy Rule 8 pleading standards. *See, e.g.*, *Cody v. Boscov's, Inc.*, 658 F.Supp.3d 779, 782 (C.D. Cal. 2023) ("[the] [p]laintiff must provide facts suggesting that [the software companies] are recording [the] [d]efendant's customers' information for some use or potential future use beyond simply supplying this information back to [the] [d]efendant").

Further, Plaintiff's reliance on *In re Facebook* is misplaced because it is inapposite. That case concerned allegations that Facebook tracked users' browsing histories across unrelated third-party websites, compiled those histories into personal profiles, and then sold those profiles to advertisers—conduct far removed from the facts here. *See In re Facebook, Inc.*, 956 F.3d at 596. Plaintiff alleges no comparable misuse. She does not claim that her data was aggregated, sold, or exploited by third parties for advertising or any independent commercial purpose. Nor does she allege that she maintains accounts with Facebook, Google, or TikTok that would enable such monetization. Her theory collapses under its own weight.

The other cases Plaintiff cites are also not based on comparable facts. (Opp. at 10:25–11:6.) For example, in *Torres v. Prudential Financial, Inc.*, the court declined to extend the party exception in a motion for summary judgment, when discovery revealed that live employees of the third-party software provider could log in to the accounts of customers and review session replays containing sensitive information entered into insurance quote forms in real time for their own independent commercial interests. 2025 WL 1135088, at *3 (N.D. Cal. Apr. 17, 2025). No comparable facts are alleged here. Plaintiff does not allege that any third party *actually used* her data for its own purposes. (Compl. ¶ 88; see also Mot. at 5:26-6:6.) Similarly, *Mikulsky v. Bloomingdale's, LLC* , the court held that whether the third party—a session replay software provider—acted as an eavesdropper was better left as an issue of fact. 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024). In short, Plaintiff's allegations do not plausibly show that third parties acted independently from Torrid or outside the Website's functionality. Her theory is speculative and legally insufficient.

**2. Plaintiff Does Not Allege Interception of "Contents"**

Plaintiff asserts that "user input data," "search queries," or "preferences" qualify as "contents" under CIPA, citing cases such as *Haleon* and *Heerde*. (Opp. at 11:8–12:5.) But Plaintiff never alleges that she entered any search terms, filled out forms, or submitted substantive information during her visit. *See* Compl. ¶ 19; 83-90. She identifies no specific communication that conveys an "intended message," as required by CIPA ¶ 631(a). to constitute "contents."

The better-reasoned authority, *Augustine*, holds that a plaintiff must plausibly allege both (1) that the intercepted data were communications and (2) that the contents—i.e., the intended message—were intercepted. 2024 WL 3450967, at *6. Plaintiff fails both prongs. Her allegations describe only generalized interactions that could occur on a website, not actual content she provided. She specifies only that she "browsed" Torrid's website. *See* Compl. ¶ 83-90. This distinguishes Plaintiff's claims from her cited authority. Applying *Augustine*, this deficiency is fatal.

**3. Plaintiff Does Not Plausibly Allege Interception Occurred "In Transit"**

Plaintiff's conclusory assertion that interception occurred "in real time" does not satisfy CIPA's requirement that interception occur while the communication is "in transit." Plaintiff's cited authority, *Valenzuela v. Keurig Green Mountain, Inc.,* rejected nearly identical allegations, explaining that parroting statutory language without factual detail explaining *how* the interception allegedly occurred during transmission is insufficient. 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). Plaintiff offers no facts showing when or how any communication was intercepted during transmission. (*See* Opp. at 12:13-26.) Plaintiff's reliance on formulaic and conclusory statements that simply track the statutory language is insufficient under CIPA.

**C. Plaintiff Still Does Not State a Cognizable Claim Under CIPA § 638.51**

Plaintiff's Opposition ignores the plain text and structure of CIPA § 638.51 and its supporting sections, which were enacted to regulate telephone surveillance—not internet activity—repeatedly reference "telephone lines" and "telephone numbers"—not websites or online technologies. For example, Penal Code § 638.52 requires that any order authorizing a trap-and-trace device must identify the person "in whose name is listed the ***telephone line*** to which the … trap and trace device is to be attached." *See* Mot. at 9 (emphasis added). This language is unambiguous:

the statute presumes a physical attachment to a telephone line, confirming its intended scope.

The Legislature's drafting history reinforces this interpretation. When it enacted other CIPA provisions expressly addressing "Internet Web sites," it did not amend § 638.51 to include similar language—even though § 638.51 was enacted the year before. It has since been amended multiple times without altering its telephone-based focus. If the Legislature intended to extend § 638.51 to websites, it could have done so. It did not.

Plaintiff argues the definition of pen register is "expansive." (Opp. at 13:12–14.) But this argument disregards § 638.52's repeated references to "telephone" while not using the terms "internet" or "website," as well as § 638.51's reliance on a decades-old definition of "electronic communication" borrowed from the federal Wiretap Act of 1986—defined long before websites existed. *See* Cal. Penal Code §§ 629.51, 638.50; 18 U.S.C. § 2510 (1986). Plaintiff offers no legislative history or interpretive authority to support her claim that this definition now encompasses modern websites or website tracking technologies.

Plaintiff's interpretation also creates an irreconcilable conflict with § 638.52, which requires identification of a "telephone line" to which the device is attached. Website technologies are not attached to telephone lines, and courts cannot comply with this statutory mandate under Plaintiff's reading. California courts have long held that statutes should be construed to avoid internal conflict. *People v. Trimble*, 16 Cal. App. 4th 1255, 1259 (1993). Torrid's interpretation avoids such conflict and preserves the statute's purpose: regulating telephone-based surveillance.

Plaintiff cites cases such as *Shah*, *Greenley*, *Mirmalek*, *Motorola*, and *Haleon* to argue that § 638.51 may apply to software. (Opp. at 13:24–14:12.) But none of these decisions meaningfully analyze the § 638.51's text, the other CIPA provisions, the legislative history, or policy implications. By contrast, Torrid's interpretation is grounded in statutory language, legislative intent, and judicial precedent. Plaintiff's expansive reading would criminalize routine website functionality—such as collecting IP addresses or URLs—and expose countless businesses to liability for standard internet practices. That is not what the Legislature intended. Recent California decisions confirm this understanding. *See Anne Heiting v. HP Inc.*, 2025 WL 2993673 (Cal.Super. Aug. 01, 2025)*; Sanchez v. Cars.com Inc.*, 2025 WL 487194 (Cal.Super. Jan. 27, 2025); *Licea v. Hickory Farms* LLC, 2024

WL 1698147 (Cal.Super. March 13, 2024). Plaintiff does not address these cases and offers no legislative history—no committee reports, bill analyses, or statements from lawmakers—supporting her interpretation. Her silence is telling. Because § 638.51 does not apply to website technologies, Plaintiff's claim should be dismissed with prejudice.

**D. Plaintiff's Fraud Claim Still Fails Under Rule 9(b)**

Plaintiff's Opposition does nothing to cure the fundamental defect in her fraud claim: the absence of particularized facts. Rule 9(b) requires a plaintiff to allege the "who, what, when, where, and how" of the alleged misrepresentation. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009). Plaintiff does not meet this standard. Instead, she relies on broad, conclusory groupings of allegations and attempts to shoehorn them into the framework articulated by case law—much like forcing a square peg into a round hole. Plaintiff identifies no specific misrepresentation made to her, no date or location of any statement, and no explanation of how she relied on it. Her Opposition merely repeats generalized assertions about Torrid's "representations" without connecting them to her own experience. This is precisely what Rule 9(b) forbids.

**E. Plaintiff Fails to Allege Unjust Enrichment**

Plaintiff argues that unjust enrichment claims may proceed even absent economic loss, asserting that she can recover "gains that a defendant realized from its allegedly improper conduct." (Opp. at 15:15–19.) This argument fails for two independent reasons. *First*, unjust enrichment is not a standalone cause of action under California law. It is an equitable remedy, not a substantive claim. (See Mot. at 15:6–8.) *Second*, even if it were available, unjust enrichment requires that legal remedies be inadequate. Plaintiff alleges no facts showing that her legal remedies are insufficient. To the contrary, she seeks damages under multiple legal theories. Where adequate legal remedies exist, equitable relief is unavailable. *See* Mot. at 15:8–9. Because Plaintiff's substantive claims fail and she has not alleged the inadequacy of legal remedies, she has no viable basis for unjust enrichment.

**IV. CONCLUSION**

For the foregoing reasons, Torrid respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiff's Complaint with prejudice.

Dated: November 25, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By */s/ Wynter L. Deagle*

WYNTER L. DEAGLE
TERESA R. MORIN
SAMUEL Z. HYAMS-MILLARD

Attorneys for Torrid LLC